A00A2590. READY TRUCKING, INC. v. BP EXPLORATION & OIL COMPANY.

(548 SE2d 420)

POPE, Presiding Judge.

Ready Trucking, Inc. sued BP Exploration & Oil Company f/k/a BP Oil Company for breach of contract, claiming that BP breached the parties' agreement by failing to collect and remit "all applicable sales tax" on Ready's numerous purchases of diesel fuel. Both Ready and BP filed motions for summary judgment. The trial court granted BP's motion and denied Ready's motion. Ready challenges both rulings.

Ready Trucking is an interstate motor common carrier and has a truck terminal in Ellenwood. At this terminal, Ready maintains two 10,000-gallon storage tanks for diesel fuel for its truck fleet. Since 1989, Ready has been a customer of BP and its predecessor, Gulf Oil Company, and regularly purchased diesel fuel from BP. When the account was established, Ready sent to BP a Georgia ST-5 Sales and Use Tax Certificate which provided that Ready was exempt from taxation on the purchase of certain enumerated goods. Ready had a business practice of sending a certificate to certain vendors in case that vendor had items that would be tax-exempt if Ready purchased them.

Between April 1, 1994, and December 31, 1996, the period at issue, Ready made approximately 150 separate purchases of diesel fuel from BP. For each sale, BP sent an invoice to Ready showing the price, amount of diesel fuel being purchased, and the various taxes included in each transaction. Although by law, as the agent collecting taxes on behalf of the State, BP was required to collect and remit all applicable taxes owed on its sales, BP did not collect or remit a required one percent state sales tax and a one percent local tax because BP mistakenly believed, based on Ready's ST-5 Certificate, that Ready was exempt from having to pay these two taxes on diesel fuel purchases.

During a sales and use tax audit of Ready's accounts conducted in early 1997, the Georgia Department of Revenue ("Department") discovered the error. The audit revealed the shortfall in taxes paid by Ready between April 1, 1994, and December 31, 1996. Consequently, the Department billed Ready $37,801.56, including a $25,560.55 assessment in back taxes owed for fuel purchased by Ready from BP during that period as well as $12,240.91 in penalties and interest.

After paying the assessment to the Department, Ready sued BP for breach of contract. The crux of Ready's complaint is that BP agreed to a purchase price that included "all applicable sales tax." In support of its motion for summary judgment, BP offered copies of the approximately 150 invoices, each of which indicates the gallons delivered, purchase price, freight, and taxes withheld by category. Although each invoice shows that BP was withholding federal tax and three percent as a "SECOND MOTOR FUEL TAX," each invoice also plainly shows that the two taxes at issue were not being withheld. And each invoice also states: "GA LOCAL SLS TAX EXEMPT" and the 11-digit number of Ready's ST-5 exemption certificate.

After the trial court entered summary judgment for BP and denied Ready's motion, Ready filed this appeal.

1. Although the State, under OCGA § 48-8-35, could have held BP liable for the back taxes instead of Ready, it was authorized to choose to recover from Ready under OCGA § 48-8-30 (g), and Ready has now paid the taxes and penalties. See *Dittler Bros., Inc. v. AMR Intl.*, 142 Ga. App. 570 (1) (236 SE2d 544) (1977). Thus, neither Ready's nor BP's liability to the State is at issue. Accordingly, this case simply involves Ready's claim that it is entitled to reimbursement from BP as damages for breach of contract.

2. Ready claims that under the terms of the approximately 150 sales agreements between Ready and BP, BP was required to pay these two taxes to the proper authorities and that it breached that agreement. It also claims that BP cannot hide behind the tax exemption certificate because BP had the burden of ensuring that the proper taxes were paid.

Each purchase was made based on either an oral or facsimile quote of the price per gallon for the fuel. The parties do not contend that the discussion or the facsimile ever mentioned the applicable taxes. However, the parties do not dispute that as a retail seller, BP incurred a statutory obligation to collect and remit all applicable sales taxes to the State. OCGA § 48-8-30 (b). This obligation necessarily became a term of the agreement because "laws in existence at the time a contract is executed are part of that contract." (Citation and punctuation omitted.) *Wilensky v. Blalock*, 262 Ga. 95, 98 (3) (414 SE2d 1) (1992). Accordingly, absent an agreement to the contrary, a simple quote to purchase gasoline at a certain price would include an agreement that the price included all applicable taxes.

By claiming that it relied on Ready's ST-5 exemption certificate, BP essentially argues that the parties had an agreement to the contrary. But it is beyond dispute that the exemption certificate does not expressly state that Ready is exempt from the tax on its purchase of diesel fuel. Further, the certificate states: "The supplier must exercise ordinary care to determine that the tangible personal property

obtained under this certificate is for the purpose indicated. Suppliers failing to exercise such care will be liable for the sales tax due on such purchases." BP's interpretation of the ST-5 was an admitted misreading of the document and/or misunderstanding of the law, BP's good faith notwithstanding.[1] As such, it was a unilateral mistake. Normally, a unilateral mistake based upon a defendant's negligence in failing to determine the facts or the law does not justify reformation of a written agreement absent fraud or inequitable conduct on behalf of the other party. *Layfield v. Sanford*, 247 Ga. 92, 93 (274 SE2d 450) (1981). Compare OCGA § 13-5-4. There is no evidence that by submitting the ST-5 to BP, Ready was attempting to defraud BP.

But, each invoice sent as a confirmation of each order shows beyond dispute that BP did not in fact charge Ready the two forms of sales tax at issue in this case on any of the approximately 150 transactions. Don Dougherty, the president of Ready, while reviewing these invoices during his deposition, readily admitted, "[w]ell, obviously it says that there is no sales tax charged on it, that it's sales tax exempt. And the next line is the exemption certificate number, which confirms the number on the Georgia use and sales tax exemption certificate." Although Dougherty conceded that he had probably seen the invoices before being deposed, he explained he had not realized the exemption appeared on them. He further testified that he, and therefore Ready, was aware at the time that Ready was not entitled to such an exemption and he would have expected Ready's office manager to have inquired why BP exempted Ready from the sales taxes. Ready's office manager, the sole employee responsible for accounts payable, testified that she merely verified the price per gallon and paid no attention to the sales tax information on the invoices. Ready never contacted BP to question the exemption.

Under these circumstances, the Georgia codification of the Uniform Commercial Code resolves this dispute. Article 2 of the UCC governs transactions involving the sale of goods. See *Mail Concepts v. Foote & Davies, Inc.*, 200 Ga. App. 778, 779 (1) (409 SE2d 567) (1991). Where the sale of goods is "between merchants," the sales invoices constitute written confirmation of their agreement. *Bicknell v. Joyce Sportswear Co.*, 173 Ga. App. 897 (2) (328 SE2d 564) (1985). As "between merchants,"

> if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and

---

[1] At the time of the sales, BP knew that motor fuels were subject to both of the two taxes at issue in this case. And, Gavin Atkinson, BP's tax director, testified that BP discovered that the ST-5 exemption did not apply to diesel fuel sales to Ready after Ready filed suit and BP researched the issue.

the party receiving it has reason to know its contents, it [constitutes a writing enforceable] against such party unless written notice of objection to its contents is given within ten days after it is received.

OCGA § 11-2-201 (2). See *Jem Patents v. Frost*, 147 Ga. App. 839 (250 SE2d 547) (1978). Further, that writing then becomes the "final expression of their agreement with respect to such terms as are included therein," and it "may not be contradicted by evidence of any prior agreement. . . ." OCGA § 11-2-202. Thus, if Ready is a merchant for the purposes of OCGA § 11-2-201 (2), the invoices govern and there has been no breach of contract.

Whether a party is a merchant under the UCC is a question of law for the court. *Perez-Medina v. First Team Auction*, 206 Ga. App. 719, 721 (1) (426 SE2d 397) (1992). But see *Greater Southern Distrib. Co. v. Usry*, 124 Ga. App. 525, 526 (184 SE2d 486) (1971) (issues of fact as to whether defendant's seller was "merchant"). A purchaser may be considered a merchant under this subsection where it is "chargeable with the knowledge or skill of merchants." OCGA § 11-2-104 (3). For instance, a purchaser can be considered a merchant where the purchaser is a "business professional as opposed to a casual or inexperienced seller or buyer," *Armco, Inc. v. New Horizon Dev. Co. of Va.*, 299 Va. 561, 565 (331 SE2d 456, 459) (1985) (citing official comment 1 for UCC subsection 2-104), and the purchase involves a type of goods related and necessary to the business or occupation of the purchaser. *Cudahy Foods Co. v. Holloway*, 55 N.C. App. 626, 627-629 (286 SE2d 606, 607-608) (1982). Here, Dougherty testified that Ready routinely made fuel purchases in the local market from BP and two other vendors. Ready is an interstate motor carrier, and it made nearly 150 purchases from BP alone. Ready was familiar with the purchase of diesel fuel and the taxation issues, and it had the knowledge necessary to discover BP's initial error. We therefore hold that Ready is a merchant for the purposes of OCGA § 11-2-201 (2) when buying diesel fuel for its business.

It is undisputed that BP sent 149 invoices to Ready which confirmed the fact that BP was not withholding either of the two missing taxes and that Ready never revoked its acceptance, in whole or in part, of the terms appearing on the invoices within ten days as required by OCGA § 11-2-201 (2). See *Jem Patents*, 147 Ga. App. at 840 (1); compare *Entertainment Sales Co. v. SNK, Inc.*, 232 Ga. App. 669, 671 (1) (502 SE2d 263) (1998). The invoices constitute an enforceable writing confirming the terms of the agreement, and they constitute an agreement between the parties that the two missing

taxes would not be collected and remitted by BP.[2] See *Joe N. Guy Co. v. Valiant Steel & Equip.*, 196 Ga. App. 20, 21 (1) (395 SE2d 310) (1990). Since there was no breach of contract by BP, the trial court did not err in denying Ready's motion for summary judgment. See *Odem v. Pace Academy*, 235 Ga. App. 648, 652 (1) (510 SE2d 326) (1998).

3. For the same reasons, Ready's contention that the trial court erred by granting summary judgment to BP lacks merit. See *Odem*, 235 Ga. App. at 654 (1).

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED MARCH 21, 2001.

*Kim G. Meyer*, for appellant.

*Webb, Carlock, Copeland, Semler & Stair, Adam L. Appel*, for appellee.

---

[2] As Ready correctly points out, one is free to enter into an agreement to reimburse another for a tax obligation, as long as the State ultimately receives the proper amount of tax. See *Chilivis v. Rogers Oil Co.*, 135 Ga. App. 176, 178 (217 SE2d 179) (1975).