**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**June 4, 2020**

# In the Court of Appeals of Georgia

A20A0322. HUNTER et al. v. LOWNDES COUNTY HEALTH DO-011 SERVICES, LLC.

DOYLE, Presiding Judge.

Sandra Kay Hunter, individually and as administratrix of the estate of her deceased daughter, Kasey Lynn Welch, sued Lowndes County Health Services, LLC, d/b/a Parkwood Developmental Center ("LCHS") for wrongful death after Kasey died as a result of choking while a patient at LCHS's facility. LCHS moved to compel arbitration, and the trial court granted the motion. Hunter appeals, arguing that the trial court erred by granting the motion to compel arbitration because the arbitration agreement is unenforceable based on a lack of consideration, LCHS's failure to sign it, and Kasey's failure to assent to it either at the time Hunter signed it or after Kasey reached the age of majority. For the reasons that follow, we reverse.

The record shows that Parkwood, a residential care facility, is operated by LCHS. Kasey, who was born in August 1994, had characteristics of "severe autism," developmental delays, mood swings, and "impaired decision-making," and she exhibited aggressive and self-injurious behaviors. On July 13, 2006, Hunter admitted 11-year-old Kasey to Parkwood, where she remained until her death approximately 9 years later. At the time of the admission, Kasey resided with Hunter, who had "ultimate decision-making authority" for all major decisions pertaining to Kasey pursuant to the child custody provisions of the divorce decree between Hunter and Kasey's father. At or around the time of the admission, Hunter executed multiple documents on Kasey's behalf, including: an admission application ; an "Authorization, Consent, and Release" authorizing Parkwood to facilitate Kasey's medical treatment, open and read her mail, and release her information to third parties deemed by Parkwood to be in Kasey's best interests ; an admission agreement ; and an arbitration agreement ("the Agreement").

In the Agreement, Kasey and Parkwood were handwritten in as parties thereto. Although each of the two pages contained a block for initials, they were left blank. Hunter signed the Agreement as "Resident's Authorized Representative," but she did not date it. There was a signature block for "Facilty's Authorized Agent," but no one

signed the Agreement on behalf of LCHS or Parkwood, nor was the "Facility's Authorized Representative" identified by name.

The Agreement provides, in relevant part, that

> any and all controversies, claims, disputes, disagreements[,] or demands of any kind (referred to as a "Claim" or "Claims") arising out of or relating to the Resident's Admission Agreement with the Facility (the "Admission Agreement") or any service or care provided to the Resident by the Facility shall be settled exclusively by binding arbitration. This means the parties are waiving their right to a trial before a jury or judge. . . .

> The parties intend that this Arbitration Agreement shall benefit and be binding upon the parties, their successors and assigns, including the agents, employees of the Facility, and anyone whose Claim is derived through or on behalf of the Resident, including without being limited to, any parent, spouse, child, guardian, executor, administrator, legal representative, or heir of the Resident.

Kasey reached the age of majority on August 17, 2012. On August 31, 2015, 21-year-old Kasey choked while eating dinner in the Parkwood dining room, and she died the following day.

On May 3, 2017, Hunter's attorneys sent a letter to LCHS making a settlement demand in regard to her claims relating to Kasey's death, mentioning therein a

3

previous letter in February 2017 to LCHS regarding settlement. The letter also stated that Hunter considered the Agreement to be unenforceable because it was not signed by LCHS and lacked consideration, but she was nonetheless withdrawing her 2006 assent to arbitrate based on the Agreement. On June 8, 2017, Hunter, individually and as administratrix of Kasey's estate, filed the instant action against LCHS for malpractice and wrongful death.[1] On July 13, 2017, LCHS moved to compel arbitration, which Hunter opposed on several grounds. The trial court granted the motion in an order prepared by LCHS's attorneys but issued a certificate of immediate review. This Court granted Hunter's interlocutory application, and this appeal followed.

1. Hunter argues that the trial court erred by granting LCHS's motion to compel arbitration because it was unenforceable. We agree.

"Arbitration is a matter of contract, meaning that arbitrators derive their authority to resolve disputes only from the parties' agreement."[2]

---

[1] Hunter also named as defendants The Hospital Authority of Valdosta and Lowndes County, Georgia, d/b/a South Georgia Medical Center. These entities are not parties to this appeal.

[2] (Citation and punctuation omitted.) *Brooks Peanut Co. v. Great Southern Peanut*, 322 Ga. App. 801, 809 (3) (746 SE2d 272) (2013).

4

Whether a valid and enforceable arbitration agreement exists is a question of law for the court. We therefore review a trial court's order granting or denying a motion to compel arbitration de novo. [LCHS], as the part[y] seeking arbitration, bear[s] the burden of proving the existence of a valid and enforceable agreement to arbitrate. And the validity of an arbitration agreement is generally governed by state law principles of contract formation.[3]

In Georgia, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."[4] Pursuant to OCGA § 13-3-2, "[t]he consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition."

> [When] determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed

---

[3] (Citation and punctuation omitted.) *McKean v. GGNSC Atlanta*, 329 Ga. App. 507, 509 (1) (765 SE2d 681) (2014).

[4] OCGA § 13-3-1.

to his manifestations of assent. In some instances, the only conduct of the parties manifesting intent is the express language of the agreement. In other instances, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.[5]

LCHS relies on *Aaron v. United Health Svcs. of Ga., Inc.*[6] to support its claim that its failure to sign the Agreement does not render it unenforceable because the parties' actions demonstrate their mutual assent. But *Aaron* is physical precedent only, and therefore not binding.[7] It is also factually distinguishable. In *Aaron*, a

---

[5] (Citations and punctuation omitted.) *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982). See also *Del Lago Ventures v. QuikTrip Corp.*, 330 Ga. App. 138, 144 (2) (764 SE2d 595) (2014). ("Assent to the terms of a contract may be given other than by signatures. . . . If one of the parties has not signed, his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound.") (citation and punctuation omitted).

[6] 349 Ga. App. 563, 565 (826 SE2d 442) (2019).

[7] See Court of Appeals Rule 33.2 (a) ("If an appeal is decided by a division of this Court, a published opinion in which all three panel judges fully concur is binding precedent. An opinion is physical precedent only (citable as persuasive, but not binding, authority), however, with respect to any portion of the published opinion in which any of the panel judges concur in the judgment only, concur specially without a statement of agreement with all that is said in the majority opinion, or dissent.").

nursing home seeking to enforce an arbitration agreement failed to sign it.[8] The nursing home prepared the agreement and presented it to the patient's son during the admission process, and the son signed it pursuant to a power of attorney.[9] After the patient's death, her son sued the nursing home for wrongful death and several other claims, and the nursing home moved to compel arbitration. The trial court granted the motion, and this Court affirmed, noting that the nursing home filled in the intended date of execution and tailored the contract language to the parties.[10] The Court also pointed out that the nursing home filed its motion to compel on the same date it filed its answer, thereby "[seeking] to enforce the [arbitration a]greement at its first available opportunity."[11]

Here, the Agreement was not dated, nor did LCHS sign it. And although Hunter advised LCHS that she intended to pursue a claim, LCHS did not express its assent to the Agreement notwithstanding its failure to sign it nor did it seek to enforce it

---

[8] See *Aaron*, 349 Ga. at 564.

[9] See id.

[10] See id. at 565-566.

[11] Id. at 566.

7

before Hunter revoked her agreement to arbitrate.[12] Because Hunter revoked her assent, there was nothing for LCHS to assent to and thus no meeting of the minds; therefore, the Agreement was unenforceable when LCHS sought to compel arbitration.[13] Accordingly, the trial court erred by granting LCHS's motion to compel arbitration.

2. Based on our holding in Division 2, we need not address Hunter's remaining enumerations of error.

*Judgment reversed. McFadden, C. J., and Hodges, J., concur.*

---

[12] Although Welch was a patient at Parkwood for many years before her death, thereby enjoying the benefits of the admission agreement signed on her behalf by Hunter, there is no evidence in the appellate record that LCHS took any steps to convey its intent to assent to the arbitration agreement until after Hunter revoked her assent. The trial court's conclusion that LCHS stipulated in judicio to the agreement in its reply brief in support of its motion to compel does not impact the outcome of this case because Hunter had already revoked her assent at that time.

[13] See *TranSouth Financial Corp. v. Rooks*, 269 Ga. App. 321, 324 (1) (604 SE2d 562) (2004) (holding that an unsigned arbitration clause is unenforceable); *Aaron*, 349 Ga. App. at 566-568 (Hodges, J., dissenting). See also *United Health Svcs. of Ga., Inc. v. Alexander*, 342 Ga. App. 1, 1-5 (a) (802 SE2d 314) (2017) (holding that an arbitration agreement between nursing home and daughter of a patient was unenforceable because there was no assent by the daughter to the agreement based on the daughter's lack of express or implied authority to bind the patient).