**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**January 29, 2021**

# In the Court of Appeals of Georgia

A20A1785. COREVEST AMERICAN FINANCE LENDER LLC v.
STEWART TITLE GUARANTY COMPANY et al.

MARKLE, Judge.

This case arises out of an allegedly fraudulent real estate transaction and requires us to consider the propriety of the trial court's grant of a motion for judgment on the pleadings. After CoreVest American Finance Lender discovered that it did not have a secured priority interest in the property used to secure its loan, it filed a claim with the title insurer, Stewart Title Guaranty Company, to cover the loss. Stewart denied the claim, and CoreVest filed suit. The trial court granted Stewart's motion for judgment on the pleadings, and CoreVest now appeals. For the reasons that follow, we find that the allegations made in the complaint are sufficient to withstand a motion for judgment on the pleadings, and we reverse the judgment entered below.

On appeal from a grant of judgment on the pleadings, we conduct a de novo review of the trial court's order to determine whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. The grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action or defense. For purposes of the motion, all well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts. Moreover, in considering a motion for judgment on the pleadings, a trial court may consider exhibits attached to and incorporated into the pleadings, including exhibits attached to the complaint or the answer. Nevertheless, we are mindful that a motion for judgment on the pleadings should be granted only if the moving party is clearly entitled to judgment.

(Citations and punctuation omitted.) *BCM Constr. Group., LLC v. Williams*, 353 Ga. App. 811, 811-812 (840 SE2d 51) (2020).

Viewed in this light, the allegations of the complaint reveal that CoreVest agreed to loan $2,677,500 to Dorsey Leon Hammond, Sr. and his company Flourish Home Investors, LLC for the purchase of certain real property located in Valdosta, Georgia. At the time, the property belonged to a company named K2, and the arrangement was for K2 to sell the property to Alvarez Investment Group, which

2

would, in turn, sell the property to Springhill Property Group, a company that Hammond and Flourish established for the purchase. CoreVest required Springhill to obtain title insurance in order to close the loan. Springhill selected an attorney with Worden and Asociados to serve as the closing agent, and SSP Title and Escrow Solutions, LLC to serve as the settlement agent. Springhill signed a promissory note, guaranteed by Hammond, indicating the amounts CoreVest would loan for the purchase of the property.

Prior to the closing, Worden delivered a "Commitment for Title Insurance," ("Commitment")[1] with the name "Stewart Title Guaranty" at the top and which appears to bear the signature of one of Worden's attorneys. This document required evidence of a warranty deed from K2 to Alvarez, along with the warranty deed from Alvarez to Springhill in order for the policy to issue. Once those deeds were filed, in that order, the security deed from Springhill to CoreVest would be filed, establishing

---

[1] A "commitment for title insurance" is also sometimes called an insurance binder, which is a contract offering proof of temporary insurance at the time of closing until the title policy issues. See *Parks v. State Farm Gen. Ins. Co.*, 231 Ga. App. 26, 28 (497 SE2d 575) (1998); see also *Popham v. Landmark American Ins. Co.*, 340 Ga. App. 603, 609 (2) (798 SE2d 257) (2017); Law of Title Insurance § 12.02 (3rd ed. 2021).

CoreVest's first priority lien on the property. In an e-mail to SSP Title, CoreVest confirmed that the deeds would be filed as directed.

CoreVest then sent Worden its closing instructions. According to this letter, Worden was to serve as the escrow agent, and SSP Title was the title company. Per CoreVest's instructions, SSP Title was to receive a warranty deed showing transfer of title from the seller to Springhill. In addition, the letter specified the following conditions in order to disburse the proceeds of the loan: that Worden be able to close the escrow; that SSP Title obtain written authorization to record the security deeds in accordance with CoreVest's instructions; and that SSP Title be "irrevocably and unconditionally committed to issuing a final title insurance policy for each Secured Instrument." The instructions further provided that "upon Escrow Agent's disbursement of the Loan Proceeds in accordance with the [closing instructions], the title insurance premiums will have been paid in full and the Proforma Policy(ies) shall constitute [CoreVest's] title insurance policy effective as of the date of such disbursement[.]" And, according to the instructions, the title policy was to be substantively the same as shown in the Commitment. A representative of SSP Title signed this form as the "Title Company," and an attorney with Worden signed as both the "Escrow Agent" and "closing attorney."

Thereafter, Stewart issued a Closing Protection Letter ("CPL") identifying Worden as its "issuing agent." The CPL provides that under certain conditions, Stewart would indemnify CoreVest

> for actual loss of settlement funds incurred by [CoreVest] in connection with the closing of the Real Estate Transaction conducted by the Issuing Agent or Approved Attorney on or after the date of [the] letter, provided . . . the Company issues or is contractually obligated to issue title insurance . . . in connection with the closing . . . [and] further provided the loss arises out of: 1. Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage . . . . 2. Fraud, theft, dishonesty, or negligence of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with the closing to the extent that the fraud, theft, dishonesty, or negligence relates to the status of the title to that interest in land or the validity, enforceability, and priority of the lien of the mortgage[.][2]

The CPL further provides that Worden was its agent "only for the limited purpose of issuing title insurance policies [and not] for the purpose of providing closing or settlement services."

---

[2] This wording tracks the statutory language in OCGA § 33-7-8.1 (a) (1).

5

The loan closed a few weeks later. According to a HUD-1 Settlement Statement, SSP Title was listed as the settlement agent. Additionally, SSP Title received payments for the title examination, the title insurance binder, and attorney fees. Payment for title insurance went to "W.A./Title Company."

Following the closing, Springhill made payments on the loan for some period of time, but then defaulted. In connection with its attempts to enforce its rights as a secured party, CoreVest obtained an updated title report that revealed that Springhill was not the record owner of the property and that there was an unsatisfied prior mortgage on the property. CoreVest ultimately made a claim to Stewart for its losses, but Stewart denied the claim on the grounds that its agent, Worden, did not actually close the loan and no title policy was ever issued. Thereafter, K2 sent a letter to CoreVest seeking to have it remove its security deed, and CoreVest requested that Stewart defend against K2's claim. Stewart denied this claim as well.

As a result of Stewart's claim denials, CoreVest brought suit against Stewart, Worden, SSP Title, Springhill, Hammond, and Flourish, alleging various claims of breach and misrepresentation. As is relevant to this appeal, CoreVest alleged that Stewart breached the CPL and the title insurance policy by failing to indemnify it from the loss of its loan, as well as for the failure to defend it against K2's claim. It

also alleged negligent misrepresentation, and requested a declaratory judgment and litigation expenses.

Stewart filed its answer and moved for judgment on the pleadings, which the trial court granted. CoreVest now appeals.[3]

1. CoreVest first contends that the trial court erred in granting Stewart's motion for judgment on the pleadings because it asserted viable claims for indemnification under the CPL; the trial court improperly made factual findings that contradicted the allegations in the complaint and made inferences that were in Stewart's favor; the trial court misapplied agency law because Worden was Stewart's agent and it had knowledge of SSP Title's involvement; and the CPL must be construed in favor of coverage under OCGA § 33-7-8.1. We agree that judgment on the pleadings was not warranted on this claim.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371 (1) (669

---

[3] Stewart and CoreVest are the only parties to this appeal.

SE2d 179) (2008). Stewart concedes that the CPL is a contract for indemnification.[4]

See OCGA § 33-7-8.1 (a). When we are called on to interpret a contract, we are mindful that

> [c]onstruction and interpretation of [an insurance] contract are matters of law for the court. . . . If the court finds that an ambiguity exists, it is the court's duty to resolve that ambiguity by applying the pertinent rules of contract construction. The rules of construction require the court to consider the policy as a whole, to give effect to each provision, and to interpret each provision to harmonize with each other. In addition, it is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless. Finally, any ambiguities in the contract are strictly construed against the insurer as drafter of the document, any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed, and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible.

(Punctuation, footnotes, and emphasis omitted.) *ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 576 (2) (649 SE2d 740) (2007).

---

[4] Our cases holding that a CPL is not insurance pre-date the 2012 enactment of OCGA § 33-7-8.1, which expressly provides that a "'Closing protection letter' means insurance that indemnifies a buyer, lender, or seller[.]" OCGA § 33-7-8.1 (a) (1) (2012). Compare *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 288 Ga. App. 642, 649 (4) (655 SE2d 269) (2007).

Here, the CPL required Stewart to indemnify CoreVest from any losses incurred in connection with the closing "conducted by the Issuing Agent or Approved Attorney" as long as the loss arose out of the failure to comply with the closing instructions, or was due to the Issuing Agent's or Approved Attorney's fraud or negligence in connection with the closing. Under the terms of the CPL, Stewart would indemnify CoreVest "provided [it] issues or is contractually obligated to issue title insurance." The trial court did not analyze this provision and instead limited its reasoning to its conclusion that Worden had not closed the loan, and, therefore, the duty to indemnify was never triggered. But the CPL provided that Worden was Stewart's agent "only for the limited purpose of issuing title insurance policies *[and not] for the purpose of providing closing or settlement services*." Thus, the CPL would still require indemnification for Worden's conduct as the issuing agent, and the fact that Worden may not have been the closing attorney would not preclude application of the indemnification provision in the CPL.

Moreover, in reaching its conclusion that Worden was not involved in the closing, the trial court relied on the documents attached to the complaint that purported to show that Worden was not the closing attorney. It is true that "[t]o the extent that there is any discrepancy between the allegations in the complaint and the

9

exhibits attached to it, the exhibits control." (Citations and punctuation omitted.) *Racette v. Bank of America, N. A.*, 318 Ga. App. 171, 172 (733 SE2d 457) (2012); see also *Lawyers Co-Operative Publishing Co. v. Huff*, 142 Ga. App. 45 (1) (234 SE2d 842) (1977) (in reviewing a motion for judgment on the pleadings, exhibits controlled over allegations in the complaint). But there are other references in the exhibits that can be construed equally to demonstrate Worden's active involvement in the closing. For example, in acknowledging the closing instructions, one of Worden's attorneys signed as both the escrow agent and the closing attorney, indicating Worden's receipt of the instructions and agreement to comply. Moreover, the settlement statement indicates that the premium for the title insurance was paid to "W.A./Title Company," which could reasonably be interpreted to refer to "Worden & Asociados." Thus, there are factual questions as to Worden's involvement, and it was improper for the trial court to resolve these disputed facts on a motion for judgment on the pleadings. See *BCM Constr. Group*, 353 Ga. App. at 815 (1); *Caldwell v. Church*, 341 Ga. App. 852, 859 (2) (c) (802 SE2d 835) (2017).

To the extent that the trial court found that the documents point to SSP Title as the closing attorney, and that Worden could not delegate its duties to SSP Title, this is another factual finding that precluded judgment on the pleadings. See *Brooks*

10

*Peanut Co. Inc. v. Great Southern Peanut, LLC*, 322 Ga. App. 801, 807 (1) (746 SE2d 272) (2013) ("The existence of agency and the extent of the agent's authority are questions of fact.") (citation omitted). The discrepancies between the various documents makes it impossible to say, as a matter of law, that Stewart is entitled to judgment in its favor. Thus, we must conclude that the trial court erred in granting Stewart's motion for judgment on the pleadings on those claims related to indemnification under the CPL.

2. In its next argument, CoreVest contends that the trial court erred when it dismissed the claims for breach of the title insurance policy because Stewart was statutorily obligated to issue a policy once it issued the Commitment and the CPL, and the lack of any policy attached to the complaint is not fatal to this claim. It again argues that the trial court made improper factual findings that ignored the allegations in the complaint. We find that there are factual questions regarding the issuance of a policy that preclude judgment on the pleadings.

The complaint specifically alleges that Stewart, through Worden, issued a Commitment and a CPL prior to the closing, and that it was thereafter obligated to issue a title insurance policy under OCGA § 33-7-8.1. Stewart disputes that it actually issued this Commitment, but acknowledges that it did issue the CPL shortly before

the closing.[5] The trial court found that there was no policy in the record and that CoreVest had not pled any terms of such a contract. It further declined to read OCGA § 33-7-8.1 as obligating Stewart to issue a policy once it issued the CPL. But the trial court's analysis is misplaced.

A review of the complaint shows that CoreVest alleged that it paid title insurance premiums as part of the closing. Importantly, the settlement statement shows that CoreVest paid premiums to "W.A./Title Company" for title insurance. If Worden, as Stewart's issuing agent, accepted premiums, Stewart was obligated to issue a policy. *Parks v. State Farm Gen. Ins. Co.*, 231 Ga. App. 26, 28 (497 SE2d 575) (1998); *Reeves v. Progressive Life Ins. Co.*, 85 Ga. App. 576, 579 (2) (69 SE2d 882) (1952). Thus, construing the allegations in the light most favorable to CoreVest, as the nonmovant, we must conclude that there remain factual questions about the issuance of a policy that preclude judgment on the pleadings.[6]

---

[5] The parties spend considerable effort arguing about the commitment letter and whether it was forged. As the trial court found, however, whether the document is a forgery is a factual issue that cannot be resolved in a motion for judgment on the pleadings.

[6] Because we conclude that there is a factual question about whether the premiums were paid, and this is potentially sufficient to trigger the obligation to issue a title insurance policy, we need not determine whether (1) OCGA § 33-7-8.1 obligated Stewart to issue a policy; (2) Stewart was obligated to issue a policy under

12

Moreover, CoreVest's failure to allege that Stewart actually issued a policy is not fatal to its claims because CoreVest does allege that it paid for title insurance as part of the closing.[7] See *Jimenez v. Chicago Title Ins. Co.*, 310 Ga. App. 9, 10 (1), n. 3 (712 SE2d 531) (2011) (noting that there was no policy in the record, but considering damages where the plaintiff's argument was that they paid for a policy and did not get it); see also *Marshall v. King & Morgenstern*, 272 Ga. App. 515, 518-519 (1) (613 SE2d 7) (2005) (summary judgment improper where there was a factual question as to whether the insurance agent orally agreed to issue a title policy). Although Stewart denies that it issued a policy, we must construe this denial as false at this stage of the proceedings. See *BCM Constr. Group., LLC*, 353 Ga. App. at 811-

the terms of the Commitment; or (3) if all of the conditions precedent were met that would trigger the obligation to issue a title policy under either the Commitment or the CPL.

[7] Interestingly, the Closing Instructions identify SSP Title, and not Worden, as the company bound to issue title insurance after closing. The allegations in the complaint indicate that CoreVest paid W. A. for a policy at closing, and it is a reasonable interpretation that W. A. is Worden. Thus, it is possible that Stewart could be obligated to issue a policy because Worden was its agent. Nevertheless, it is also possible that, with the benefit of discovery, the evidence will show that SSP Title was the entity obligated to issue insurance.

812. Without the benefit of discovery, it is premature to conclude that CoreVest is not entitled to indemnification or a defense under the policy.[8]

3. Finally, CoreVest argues that the trial court erred in granting the motion as to its claims for negligent misrepresentation because it alleged that Stewart represented it would issue a title insurance policy protecting CoreVest's interests, and CoreVest relied on those representations in agreeing to fund the loan. . These allegations are sufficient to withstand a motion for judgment on the pleadings.

To state a claim for negligent misrepresentation, CoreVest must show: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and

---

[8] CoreVest makes two different arguments about the breach of the title policy: (a) Stewart's failure to indemnify CoreVest; and (2) its failure to defend CoreVest against K2's claim. It is well-settled that the duty to defend and the duty to indemnify are discrete obligations. *Penn-America Ins. Co. v. Disabled American Veterans, Inc.*, 268 Ga. 564, 565 (490 SE2d 374) (1997). The duty to defend arises where the claims as alleged in the complaint potentially fall within the policy coverage. *Lawyers Title Ins. Corp. v. Stribling*, 294 Ga. App. 382, 385 (670 SE2d 154) (2008); *Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assn., Inc.*, 288 Ga. App. 355, 356 (654 SE2d 207) (2007). Thus, the duty to defend turns on the language of the policy and the allegations in the complaint. *Bates v. Guar. Nat. Ins. Co.*, 223 Ga. App. 11, 14 (2) (476 SE2d 797) (1996). Because CoreVest alleged that it paid for a policy at closing, and the record shows some payment for title insurance, it is premature to conclude that there is no policy under which Stewart would be required to indemnify or defend CoreVest.

14

(5) damages." (Citation and punctuation omitted.) *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 367 (3) (724 SE2d 53) (2012). Here, CoreVest alleged that Stewart falsely represented it would issue a title policy in the Commitment and the CPL, and CoreVest justifiably relied on this representation in closing the loan. Given the confusing nature of the documentation surrounding this transaction, these allegations are sufficient to withstand the motion for judgment on the pleadings.

It is possible that, after discovery, Stewart may be entitled to summary judgment, but that is not the procedural posture before us. Because there are factual questions regarding this transaction, we conclude that the trial court erred in granting the motion for judgment on the pleadings. Therefore, we reverse the trial court's grant of the motion in all respects.[9]

*Judgment reversed. Reese, P. J., and Colvin, J., concur.*

---

[9] Because we conclude that the claims survive the motion for judgment on the pleadings, CoreVest's claim for litigation fees remains viable as well. *Collins v. Athens Orthopedic Clinic*, 356 Ga. App. 776, 782 (5) (849 SE2d 213) (2020).

15