**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 22, 2017**

# In the Court of Appeals of Georgia

A17A0335. UNITED HEALTH SERVICES OF GEORGIA, INC. et al. v. ALEXANDER et al.

MCFADDEN, Presiding Judge.

The issue in this appeal is whether the trial court erred in denying a motion to enforce an arbitration agreement. Because the appellants, as the parties seeking arbitration, failed to carry their burden of proving a valid and enforceable arbitration agreement, we affirm.

1. *Facts and procedural posture.*

On June 12, 2013, Doris Alexander was admitted to PruittHealth-Forsyth nursing home, formerly known as Heritage Healthcare of Forsyth. On or about that same date, Carol Alexander, Doris Alexander's daughter, signed a nursing home admission agreement and other documents, including an optional arbitration

agreement naming her mother and the nursing home as parties. The arbitration agreement provided that it was voluntary and not a precondition to admission to the nursing home, that the parties waived the right to a jury trial and instead agreed to have any future disputes between them resolved by binding arbitration, that an arbitration decision would be final and unappealable, that the agreement was governed by the Federal Arbitration Act and not by the Georgia Arbitration Act, and that the patient/resident could revoke the agreement within 30 days of signing it. Carol Alexander signed the agreement on the line designated for the signature of the patient/resident. Doris Alexander was not present when her daughter signed the arbitration agreement, Carol Alexander never showed or discussed the arbitration agreement with her mother, and Doris Alexander never signed the agreement herself.

Doris Alexander remained a resident of the nursing home until she died on February 27, 2014. On May 5, 2015, Jeanette Alexander, another of Doris Alexander's children and administrator of her estate, filed a lawsuit against United Health Services of Georgia, Inc., and other defendants, asserting multiple causes of action, including claims for negligence, wrongful death, and medical malpractice. Based on the arbitration agreement, United Health and other defendants filed a motion to dismiss or, alternatively, to stay proceedings and compel arbitration. After

2

a hearing, the trial court denied the motion, finding that there was no valid and enforceable arbitration agreement because Carol Alexander did not have the authority to sign the arbitration agreement on her mother's behalf. The defendants' application for interlocutory appeal was granted, and this appeal followed.

2. *Enforceability of the arbitration agreement.*

"Arbitration is a matter of contract, meaning that arbitrators derive their authority to resolve disputes only from the parties' agreement." *Brooks Peanut Co. v. Great Southern Peanut,* 322 Ga. App. 801, 809 (3) (746 SE2d 272) (2013) (citation and punctuation omitted).

> Whether a valid and enforceable arbitration agreement exists is a question of law for the court. We therefore review a trial court's order granting or denying a motion to compel arbitration de novo. The [appellants], as the parties seeking arbitration, bear the burden of proving the existence of a valid and enforceable agreement to arbitrate. And the validity of an arbitration agreement is generally governed by state law principles of contract formation.

*McKean v. GGNSC Atlanta*, 329 Ga. App. 507, 509 (1) (765 SE2d 681) (2014) (citations and punctuation omitted). Under Georgia law, to constitute a valid contract, there must be, among other things, "the assent of the parties to the terms of the contract." OCGA § 13-3-1. "Thus, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Brooks Peanut Co.*, supra (citation

3

and punctuation omitted). See also *TranSouth Fin. Corp. v. Rooks*, 269 Ga. App. 321, 324 (1) (604 SE2d 562) (2004) (party seeking to enforce arbitration agreement must prove assent to the contractual terms).

In the instant case, Doris Alexander did not personally assent to the arbitration agreement. United Health and the other appellants argue, however, that Carol Alexander had both express and implied authority to act as her mother's agent and sign the agreement on her mother's behalf. Indeed, "[t]raditional principles of agency law may bind a nonsignatory to an arbitration agreement." *Triad Health Mgmt. of Ga, III v. Johnson*, 298 Ga. App. 204, 206 (2) (679 SE2d 785) (2009) (citation and punctuation omitted). Under such traditional principles of agency law, "[t]he relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1. But contrary to the appellants' claims, Carol Alexander did not have express or implied authority to sign the arbitration agreement on her mother's behalf.

(a) *Express authority.*

It is undisputed that Doris Alexander did not execute a power of attorney or any other written document expressly authorizing her daughter Carol Alexander to

4

sign the arbitration agreement or otherwise act for her. See *Life Care Centers of America v. Smith,* 298 Ga. App. 739, 743-744 (1) (681 SE2d 182) (2009) (arbitration agreement signed by nursing home resident's daughter was unenforceable where daughter had no general power of attorney, but only a power of attorney for health care decisions). Compare *Triad Health Mgmt.,* supra at 207-208 (2) (arbitration agreement signed by son for father was enforceable where a general power of attorney expressly gave the son full power and authority to act on behalf of father). Nevertheless, the appellants contend that a written agency agreement was not required and because the daughter had previously signed certain medical documents for her mother, who had not objected, such conduct amounted to the mother expressly granting her daughter general authority to act as her agent without limitation. We disagree.

It is true that "a contract of agency signed by both parties is not essential to the creation of the principal-agent relationship. Existence of an agency may be established by proof of circumstances, apparent relations, and conduct of the parties.*"* *Clyde Chester Realty Co. v. Stansell*, 151 Ga. App. 357, 358 (1) (A) (259 SE2d 639) (1979). However, the conduct of the parties here does not establish that Doris Alexander expressly granted Carol Alexander the general authority to act as her agent

without limitation. While Carol Alexander deposed that her mother had not objected when she previously signed documents, Carol Alexander further explained that her mother did not know about the specific paperwork that she was signing and that they had never actually discussed the daughter making decisions for her mother. With regard to the nursing home documents, including the arbitration agreement, Carol Alexander testified that her mother never provided her express permission to sign any of those documents. Moreover, Gloria Hammond, who had signed the arbitration agreement for the nursing home as its own authorized agent and who had presented the agreement to Carol Alexander for her signature, testified that she knew that Carol Alexander did not have a power of attorney to act for Doris Alexander and that there was no evidence that Doris Alexander had expressly authorized her daughter to sign the agreement. Under these circumstances, while the prior conduct of Doris Alexander may have authorized Carol Alexander to sign certain medical forms for her, "there is no evidence that [Doris Alexander], prior to or at her admission to the nursing home, gave [her daughter] express authority to enter into the [arbitration] agreement on her behalf." *McKean*, supra at 509 (1) (a). See also *Ashburn Health Care Center v. Poole*, 286 Ga. App. 24, 26-27 (648 SE2d 430) (2007) (where no power of attorney, nursing home failed to establish that husband had actual authority

6

to sign arbitration agreement on behalf of his wife upon her admission to nursing home); *Hogsett v. Parkwood Nursing & Rehab. Center*, 997 FSupp.2d 1318, 1324 (I) (B) (2) (N. D. Ga. 2014) (holding that daughter had no express authority to sign arbitration agreement for mother where no power of attorney and daughter did not discuss signing the agreement with her mother).

(b) *Implied authority.*

We note that "Georgia courts have used the terms 'apparent' and 'implied' authority interchangeably." *McKean*, supra at 510 (1) (a), n. 4 (citation and punctuation omitted). "[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the *principal* which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Id. at 510 (1) (a) (citation and punctuation omitted; emphasis in original). Here, the appellants have not presented any evidence of words or conduct of Doris Alexander that could have caused the nursing home to believe that she consented to having the arbitration agreement signed on her behalf by her daughter. Rather, the appellants rely on evidence that Hammond, the nursing home employee, had seen prior medical documents signed by Carol Alexander for her mother and that Hammond took the

signing of those documents into consideration in deciding to allow Carol Alexander to sign the arbitration agreement. However, Carol Alexander's "own action of signing [documents for her mother] is insufficient to create agency: Any manifestations of implied agency or apparent authority arising only through the words or acts of the purported agent are insufficient to authorize a finding that an agency existed." Id. (citation and punctuation omitted). Thus, "[a]n agency finding cannot be based upon the assumption that an agency relationship exists or upon an inference drawn from the alleged agent's actions." *Ashburn Health Care Center*, supra at 26 (citation omitted). Accordingly, the arbitration agreement is not enforceable and the trial court properly denied the motion to compel arbitration. Id. at 27.

3. *Foreign law.*

The appellants argue that the Alabama Supreme Court, in *Kindred Nursing Ctrs. East v. Jones*, 201 So.3d 1146 (2016 Ala. LEXIS 26), enforced an arbitration agreement in similar circumstances and that we should likewise find that the agreement in this case is enforceable. While decisions of foreign courts may be instructive, they are not binding on this court. *Southern Ry. Co. v. Malone Freight Lines*, 174 Ga. App. 405, 408 (1) (330 SE2d 371) (1985). Given the controlling

Georgia law cited above, we need not rely on authority from another state to resolve this case.

The appellants also argue that the arbitration agreement in this case should be enforced because federal policy favors arbitration.

> As the Eleventh U. S. Circuit Court of Appeals stated in *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (II) (B), n. 5 (11th Cir. 2014), the federal policy favoring arbitration is taken into consideration even in applying ordinary [s]tate law. The federal policy favoring arbitration is not, however, the same as applying a presumption of arbitrability. We only apply the presumption of arbitrability to the interpretation of contracts if we have already determined that, under [s]tate law, the parties formed a valid agreement to arbitrate.

*Bickerstaff v. SunTrust Bank*, 332 Ga. App. 121, 128 (2) (a) (770 SE2d 903) (2015), reversed on other grounds, 299 Ga. 459 (788 SE2d 787) (2016). "[T]he federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Green Tree Servicing v. Jones*, 333 Ga. App. 184, 185 (775 SE2d 714) (2015) (citation and punctuation omitted). "Accordingly, the first task of a court asked to compel arbitration of a dispute is *to determine whether the parties agreed to arbitrate that dispute*." *Primerica Financial Svcs. v. Wise*, 217 Ga. App. 36, 40 (5) (456 SE2d 631) (1995) (citation and punctuation omitted; emphasis in original). Here,

9

because no valid and enforceable agreement to arbitrate was formed, the federal policy in favor of arbitration does not control.

*Judgment affirmed. Branch and Bethel, JJ., concur.*