**SECOND DIVISION**
**MILLER, P. J.,**
**ELLINGTON, P. J., and ANDREWS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 23, 2018**

# In the Court of Appeals of Georgia

A18A0358. COLEMAN v. UNITED HEALTH SERVICES OF
GEORGIA, INC. et al.

ANDREWS, Judge.

Marvin Coleman sued numerous defendants for negligence, medical malpractice, fraud, and other claims relating to his care at a nursing home. The defendants subsequently moved to dismiss or stay the proceedings and compel arbitration. The trial court granted the motion, staying the lawsuit pending conclusion of the arbitration. We granted Coleman's application for interlocutory review, and for reasons that follow, we reverse.

On appeal, we review the record de novo to determine whether the trial court's order compelling arbitration is correct as a matter of law. See *Ashburn Health Care Center v. Poole*, 286 Ga. App. 24, 24 (648 SE2d 430) (2007). So viewed, the record

shows that Coleman lived with his sister and brother-in-law, Charles Biggerstaff. On September 7, 2009, Coleman signed an Advance Directive for Health Care appointing his sister and Biggerstaff as health care agents authorized "to make health care decisions for [him]." The directive permitted the Biggerstaffs to render any health care decisions that Coleman could make, including:

> To authorize [Coleman's] admission to or discharge (including transfers) from any hospital, skilled nursing facility, hospice, or other health care facility or service;

> To request, consent to, withhold, or withdraw any type of health care; and

> To contract for any health care facility or service for [Coleman], and to obligate [Coleman] to pay for these services.

In April 2013, Coleman was admitted to Heritage Healthcare of Forsyth for long-term nursing care. Coleman signed his admission documents, including a voluntary arbitration agreement with the Forsyth facility, and indicated on various forms that Biggerstaff was his "representative" or "responsible party." At some point, however, Coleman began exhibiting memory and behavioral issues that the Forsyth

facility could not address, and he was transferred to the memory unit at Heritage Healthcare of Macon[1] in March 2014.

Biggerstaff signed Coleman's admission paperwork at the Macon facility as "Patient/Resident Representative," executing, among other things, a voluntary arbitration agreement. Pursuant to that agreement, the parties – designated as the Macon facility, Coleman, and Biggerstaff – purportedly agreed to waive their right to a jury trial and resolve any disputes through binding arbitration. Coleman did not sign the Macon arbitration agreement and was not present when Biggerstaff executed it.

In December 2014, Coleman filed suit against the Macon facility and other defendants for injuries he allegedly sustained while residing at the home. The defendants answered and moved to compel arbitration, pointing to the arbitration agreement signed by Biggerstaff. The trial court granted the motion, but issued a certificate of immediate review, and we granted Coleman's application for interlocutory appeal.

1. As the parties seeking arbitration, the defendants bear the burden of establishing that a valid and enforceable arbitration agreement exists. See *Triad*

---

[1] Heritage Healthcare of Macon later became Pruitthealth-Macon, LLC.

3

*Health Mgmt. of Ga., III v. Johnson*, 298 Ga. App. 204, 206 (2) (679 SE2d 785) (2009). "Whether there is a valid agreement to arbitrate is generally governed by state law principles of contract formation, and is appropriate for determination by the court." Id. A contract is valid only if the parties assented to the contract terms. See *United Health Svcs. of Ga. v. Alexander*, 342 Ga. App. 1, 2 (2) (802 SE2d 314) (2017). "Thus, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. (citation and punctuation omitted).

Although Coleman did not personally sign the arbitration document, "traditional principles of agency law may bind a nonsignatory to an arbitration agreement." Id. at 3 (citation and punctuation omitted). This "relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1. In granting the defendants' motion, the trial court found that Coleman authorized Biggerstaff to sign the arbitration agreement for him. We disagree.

(a) *Express Authority.* According to the defendants, Coleman expressly permitted Biggerstaff to sign the agreement by executing the Advance Directive for Healthcare. That document, however, appointed Biggerstaff as Coleman's agent for *health care* decisions. Undoubtedly, he was authorized to sign the admission

4

agreement and take other action necessary to admit Coleman to the Macon facility. By its terms, however, the arbitration agreement was voluntary and "not a precondition to admission, expedited admission, or the furnishing of services." Biggerstaff's decision to execute the arbitration agreement cannot be viewed as a health care decision. See *Life Care Centers of America v. Smith*, 298 Ga. App. 739, 743-744 (1) (681 SE2d 182) (2009) ("[T]he execution of an arbitration agreement is considered a health care decision within the authority of a health care surrogate, *only* when that arbitration provision is *required* for admission to the nursing home.") (emphasis in original). The advance directive, therefore, did not authorize Biggerstaff to sign the agreement for Coleman. See id.

The defendants also contend that Coleman expressly authorized his brother-in-law to enter the Macon arbitration agreement by naming Biggerstaff as his representative or "responsible party" in the Forsyth admission papers. Biggerstaff, however, denied that Coleman gave him broad agency authority, noting that he was only Coleman's agent with respect to health care issues. And the record contains no evidence that Coleman expressly permitted Biggerstaff to make anything other than health care decisions. Accordingly, the defendants have not shown express authority. See *United Health Svcs. of Ga.*, supra at 4 (2) (a) (although mother may have

5

authorized daughter to sign medical forms for her, there was no evidence that she gave daughter express authority to enter arbitration agreement on her behalf); *Life Care Centers of America*, supra at 742 (1) ("[T]he plain language of the health care power of attorney did not give [daughter] the power to sign away her mother's or her mother's legal representative's right to a jury trial.").

(b) *Apparent Authority.* Next, the defendants claim that Biggerstaff had apparent or implied authority to bind Coleman to the arbitration agreement.[2] Again, we disagree. Apparent authority to perform an act "is created as to a third person by written or spoken words or any other conduct of the *principal* which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *McKean v. GGNSC Atlanta*, 329 Ga. App. 507, 510 (1) (a) (765 SE2d 681) (2014) (citation omitted) (emphasis in original).

Coleman permitted Biggerstaff to make health care decisions on his behalf and had previously designated him as his representative. But the Macon facility's admissions director did not speak to Coleman prior to his admission or review the

[2] Georgia courts use the terms "apparent authority" and "implied authority" interchangeably. See *United Health Svcs. of Ga.*, supra at 4 (2) (b).

arbitration agreement with him. And although she understood from Biggerstaff that he had "power of attorney," she did not obtain supporting documentation or confirm Biggerstaff's authority with Coleman. See *McKean*, supra ("Any manifestations of implied agency or apparent authority arising only through the words or acts of the purported agent are insufficient to authorize a finding that an agency existed.") (citation and punctuation omitted). Coleman's prior decision to sign the Forsyth arbitration agreement raises no inference with respect to Biggerstaff's authority to execute the Macon document. Similarly, the fact that Biggerstaff helped Coleman pay certain bills and sell his car does not establish apparent authority to waive Coleman's right to a jury trial, particularly without evidence that the defendants knew about this conduct. See *Ashburn Health Care Center*, supra at 26 (no apparent authority where third party lacked knowledge of circumstances allegedly giving rise to such authority).

The defendants have not demonstrated that Coleman authorized Biggerstaff to sign the Macon arbitration agreement or created the impression that he gave Biggerstaff such authority. The purported agreement with Coleman, therefore, is invalid. See *United Health Svcs. of Ga.*, supra at 3-5 (2) (a) & (b); *McKean*, supra at 509-510 (1) (a); *Ashburn Health Care Center*, supra at 26-27.

7

2. Alternatively, the defendants argue that Coleman is bound by the terms of the arbitration agreement as a "direct third-party beneficiary." As discussed above, Biggerstaff lacked authority to sign the agreement on Coleman's behalf, undermining the validity of any alleged contract between Coleman and the nursing home. See *McKean*, supra at 513-514 (2) (nursing home patient not bound as third party beneficiary to arbitration agreement signed by son, who lacked authority to execute agreement on mother's behalf). According to the defendants, however, Biggerstaff also signed the agreement individually, creating a binding contract between the nursing home and Biggerstaff to which Coleman was a third-party beneficiary.

A person becomes a third-party beneficiary to a contract when "one party to the contract promised another party to the contract to render some performance to the nonparty to the contract. . . [and] both parties to the contract intended that the contract benefit the nonparty." *Vaughn, Coltrane & Assoc. v. Van Horn Constr.*, 254 Ga. App. 693, 694 (563 SE2d 548) (2002). Pursuant to OCGA § 9-2-20 (b), the third-party beneficiary "may maintain an action against the promisor on the contract." The beneficiary is also "bound by any valid and enforceable provisions of the contract in seeking to enforce [his] claim[]." *Lankford v. Orkin Exterminating Co.*, 266 Ga. App. 228, 229 (1) (597 SE2d 470) (2004) (citation and punctuation omitted).

8

The defendants claim that, pursuant to the terms of the arbitration agreement, Coleman "obtained the benefits of dispute resolution outside the courts . . . in connection with any claim arising from" his residency at the Macon facility. Coleman, however, has repudiated this alleged benefit and does not seek to enforce the arbitration agreement. Although he received care at the nursing facility, the arbitration provision was not part of – or required by – his admission agreement and has no bearing on "the [facility's] duties and obligations with respect to the provision of care and treatment."

Given these circumstances, we cannot find Coleman subject to arbitration on a third-party beneficiary basis. To conclude otherwise would allow contracting parties to bind an unsuspecting third party to arbitration without providing a benefit desired or accepted by the third party. Even if Biggerstaff signed the arbitration agreement in his individual capacity, therefore, it cannot be enforced against Coleman. See *United Health Svcs. of Ga.*, supra at 2 (2) (party not required to arbitrate dispute unless he agrees to arbitration); *Mendez v. Hampton Court Nursing Center*, 203 So3d 146, 149 (Fla. 2016) (patient not subject to arbitration agreement as a third-party beneficiary because "[t]he third-party beneficiary doctrine does not permit two parties to bind a third – without the third party's agreement – merely by conferring a benefit

9

on the third party."). Compare *JP Morgan Chase & Co. v. Conegie*, 492 F3d 596, 600 (5th Cir. 2007) (nursing home patient bound as third-party beneficiary by arbitration clause within admission agreement, through which patient accepted benefit of nursing care); *THI of South Carolina at Columbia v. Wiggins*, 2011 U.S. Dist. LEXIS 103638, at *17-18 (D.S.C. 2011) (same).

*Judgment reversed. Miller, P. J., and Ellington, P. J., concur.*