**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A2057. LYNN v. LOWNDES COUNTY HEALTH SERVICES,
     LLC.

MILLER, Presiding Judge.

Elnora Lynn, in her capacity as administratrix of the estate of her son Curtis
Leon Thomas, appeals from the trial court's final order confirming her arbitration
award against Lowndes County Health Services, LLC ("Lowndes County") and
denying her motion to tax costs against Lowndes County. Lynn argues that (1) the
trial court erred by compelling arbitration because she had no authority to enter into
an arbitration agreement on Thomas' behalf, and (2) that the trial court erred by
denying her motion for litigation fees because she was entitled to compensation for
litigation expenses as the prevailing party in the arbitration proceeding under OCGA
§ 9-15-1. Because we conclude that Lynn did not have authority to sign the

arbitration agreement on Thomas' behalf, we reverse the trial court's order compelling arbitration and we also reverse the trial court's order confirming the arbitration award. Because we reverse the trial court's order compelling arbitration, we do not address Lynn's claim concerning the denial of her motion to tax costs.

"We review a trial court's order granting or denying a motion to compel arbitration de novo. Additionally, the construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review." (Citations and punctuation omitted.) *Web IV, LLC v. Samples Construction, LLC*, 349 Ga. App. 607 (824 SE2d 107) (2019). Moreover, "[t]he [appellee], as the part[y] seeking arbitration, bear[s] the burden of proving the existence of a valid and enforceable agreement to arbitrate." (Citations and punctuation omitted.) *United Health Svcs. of Ga., Inc. v. Alexander*, 342 Ga. App. 1, 2 (2) (802 SE2d 314) (2017).

So viewed, the record shows that Thomas was born with down syndrome, was mentally retarded, had cataracts, was blind in his right eye, and was only able to communicate by facial expressions and vocalizations. Thomas subsequently developed seizures, which required him to have 24-hour care, and he began living at various medical facilities at the age of 13. Lynn contacted the Parkwood

2

Development Center ("the Center")[1] so that she could move Thomas to a facility closer to her home. Lynn moved Thomas to the Center on February 13, 2013. During the admission process, Lynn signed an arbitration agreement as Thomas' representative. The agreement stipulated that as to all disputes governed by the agreement, each party waived the right to a jury trial and agreed that all disputes between the parties would "be resolved through binding arbitration."

According to Lynn, Thomas, who was 50-years-old at the time he was moved to the Center, began to deteriorate after his arrival. Thomas allegedly began to experience episodes of vomiting and lost more than ten percent of his body weight. Thomas also allegedly developed a pressure wound on his right hip, lost his ability to walk and feed himself, and became very weak. Thomas was discharged and sent to another medical facility in August 2013 and later passed away on March 30, 2016. Lynn was subsequently appointed as the administratrix of Thomas' estate.

Lynn filed the instant complaint against Lowndes County, alleging claims of negligence and violations of the Bill of Rights for Residents of Long-term Care Facilities. Lowndes County filed a motion to compel arbitration pursuant to the

---

[1] Lowndes County was alleged to have owned and operated the Parkwood Development Center.

3

agreement Lynn signed upon Thomas' admission to the Center. Lynn challenged the motion on the basis that she had no authority to sign the arbitration agreement for Thomas. The trial court granted Lowndes County's motion to compel arbitration after concluding that Lynn had both actual and apparent authority to sign the arbitration agreement on Thomas' behalf, and that the agreement was enforceable because Lynn ratified the agreement after she was appointed as the administratrix of Thomas' estate.

An arbitration panel rendered a verdict in Lynn's favor and awarded $125,000 in compensatory damages. Lynn then filed a motion to confirm the arbitration award and to tax costs against Lowndes County under OCGA § 9-15-1. The trial court denied Lynn's motion to tax costs against Lowndes County, and this appeal followed.

1. Before we reach the merits of the appeal, we address, sua sponte, Lynn's standing as the administratrix of her son's estate to appeal the order confirming the arbitration award as the prevailing party in the arbitration proceeding. See *U-haul Co. of Arizona v. Rutland*, 348 Ga. App. 738, 743 (1) n. 3 (824 SE2d 644) (2019) (stating that appellate courts may raise standing issue sua sponte).

It is a bedrock principle of appellate litigation that "[a] party generally may not appeal a ruling that benefitted him or her." *Landry v. Walsh*, 342 Ga. App. 283, 288 (3) n. 4 (801 SE2d 553) (2017). We have held, however, that "a claim that a contract

4

dispute is not subject to arbitration constitutes an attack on the subject matter jurisdiction of the arbitrator." *Yates v. CACV of Colorado, LLC*, 303 Ga. App. 425, 432 (1) (693 SE2d 629) (2010). We note that in the trial court proceedings below, Lynn maintained the position that she had no authority to sign the arbitration agreement on Thomas' behalf. Accordingly, although Lynn prevailed in the arbitration proceeding, because she attacks the subject matter jurisdiction of the arbitrator, we will address the merits of the appeal. See also id. at 430 (1) ("[A] party cannot be required to submit to arbitration any dispute which [she] has not agreed so to submit.") (citation omitted).

2. Lynn argues that the trial court erred by entering an order compelling arbitration because she lacked actual and apparent authority to sign the arbitration agreement on Thomas' behalf. We agree.[2]

[T]he validity of an arbitration agreement is generally governed by state law principles of contract formation.[3] Under Georgia law, to constitute

---

[2] Although Lynn was the prevailing party in the arbitration proceeding, she nevertheless has standing to appeal the order compelling arbitration. See OCGA § 9-9-16 ("Any judgment or any order considered a final judgment under this part may be appealed pursuant to Chapter 6 of Tile 5.").

[3] This principle still applies in cases like the instant case, where the arbitration agreement states that the agreement is to be governed by the Federal Arbitration Act ("FAA"). *Yates*, supra, 303 Ga. App. at 430 (1).

5

a valid contract, there must be, among other things, the assent of the parties to the terms of the contract. Thus, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.

(Citations and punctuation omitted.) *United Health Svcs. of Ga., Inc.,* supra, 342 Ga. App. at 2 (2).

In the instant case, Thomas did not personally assent to the arbitration agreement. Nevertheless, "traditional principles of agency law may bind a nonsignatory to an arbitration agreement." (Citation omitted.) *Coleman v. United Health Svcs. of Ga., Inc.*, 344 Ga. App. 682, 683 (1) (812 SE2d 24) (2018). "[T]he relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." (Citation and punctuation omitted.) *United Health Svcs. of Ga., Inc.*, supra, 342 Ga. App. at 3 (2). Therefore, "a contract of agency signed by both parties is not essential to the creation of the principal-agent relationship." (Citation and punctuation omitted.) Id. at 3 (2) (a).

### *(a) Actual Authority*

Here, there is no evidence in the record that Lynn had actual authority to sign the arbitration agreement for Thomas. As the admissions director at the facility

admitted in her affidavit, Lynn did not possess a power of attorney or any other document authorizing Lynn to sign the arbitration agreement or to take *any* action on Thomas' behalf.

Still, Lowndes County contends that Lynn had actual authority to sign the arbitration agreement for Thomas because the admissions director spoke with Lynn during the admissions process, the director averred that Lynn confirmed her authority to execute the agreement, and Lynn testified in her deposition that she had authority to sign the arbitration agreement. To support this argument, Lowndes County relies on our previous decisions in *Augusta Roofing & Metal Works, Inc. v. Clemmons*, 97 Ga. App. 576 (103 SE2d 583) (1958), *Stone v. First Nat. Bank of Atlanta*, 159 Ga. App. 812 (285 SE2d 207) (1981), and *Salters v. Pugmire Lincoln-Mercury, Inc.*, 124 Ga. App. 414 (184 SE2d 56) (1971). None of these cases, however, supports Lowndes County's argument.

It is true that in *Augusta Roofing & Metal Works, Inc.*, we noted that sworn testimony of an agent is competent evidence of such agency. Id. at 578 (2). In *Stone*, this Court said that "[t]he bare assertion or denial of the existence of an agency relationship is a statement of fact when made by one of the purported parties to the relationship[.]" (Citation omitted.) *Stone*, supra, 159 Ga. App. at 814 (4). Similarly,

7

in *Salters*, we stated that "[i]t has long been the Georgia rule that one who is a party to the relationship (the principal or agent) may testify as a fact as to the existence or non-existence of the relationship and that such testimony would not be subject to the objection that the statement was a conclusion or the ultimate fact." *Salters*, supra, 124 Ga. App. at 415 (1).

These opinions merely stood for the proposition that a principal or an agent may testify as to their status as the principal or agent of the other without objection. None of these opinions can be interpreted for the proposition that such sworn testimony by a principal or an agent was sufficient *by itself* to prove that a principal-agent relationship did, in fact, exist, even in the presence of evidence that would negate such a relationship. Indeed, in subsequent decisions from this Court, we have been clear that although a principal or an agent may testify as a fact of their status as a principal or an agent of the other, such testimony must have some evidentiary support and is only conclusive on the question of an agency relationship when *both* the principal and agent testify of their status as to the other. See *Popham v. Landmark American Ins. Co.*, 340 Ga. App. 603, 607 (1) (a) (798 SE2d 257) (2017) ("[T]he label or characterization of the relationship by the purported agent is not sufficient to show what actual authority the agent had been given by the purported principal.");

8

*Process Posters, Inc. v. Winn-Dixie Stores, Inc.*, 263 Ga. App. 246, 251 (1) (587 SE2d 211) (2003) ("One who is a party to the relationship (principal or agent) may testify as a *fact* as to the existence or non-existence of the relationship. A statement of 'fact,' of course, must have some supporting basis.") (citation and punctuation omitted; emphasis in original); *Beck v. Paideia School, Inc.*, 191 Ga. App. 183, 184-185 (1) (381 SE2d 132) (1989) (dismissing agency claim where although the witness testified in his deposition that he was the agent for the principal, the evidence failed to prove the existence of an agency relationship). See also *Southern Tax Consultants, Inc. v. Scott*, 267 Ga. 347 (478 SE2d 126) (1996) (stating that an agent's oath, "standing alone, would not constitute proof of agency against the property owner."). Thus, to the extent that Lowndes County relies on Lynn's deposition testimony to establish agency, Lynn's own testimony that she believed she had authority to sign the arbitration agreement on Thomas' behalf is insufficient by itself to conclude that she did, in fact, have authority to sign the agreement. Therefore, the trial court erred by ruling that Lynn had actual authority to sign the arbitration agreement on Thomas' behalf.

*(b) Apparent Authority*

9

We also conclude that the trial court erred by ruling that Lynn had apparent authority to sign the arbitration agreement on Thomas' behalf.

> In order to recover under a theory of apparent or ostensible agency, a plaintiff must establish three elements: (1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation; and (3) that this justifiable reliance led to the injury.

(Citation omitted.) *Sage Atlanta Properties, LTD. v. Hawxhurst*, 349 Ga. App. 758, 761 (824 SE2d 387) (2019). We have explained that

> [t]he doctrine of apparent agency is predicated on principles of estoppel, and its applicability, therefore, is determined by examining both the conduct of the alleged *principal* and the detrimental reliance on that conduct by the third party asserting the doctrine. Apparent authority creates an estoppel allowing third parties to bind a principal to the agent's act on account of the principal's conduct, reasonably construed by third parties acting in innocent reliance thereon. The acts of the agent which create apparent authority may include written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him. While a finding of apparent agency cannot be based upon the assumption that an agency relationship exists, the conduct giving rise to apparent agency may be proved by proof of circumstances, apparent relations, and the conduct of the parties. Such evidence must show that the principal either

10

intended to cause the third person to believe that the agent was authorized to act for him, or he should have realized that his conduct was likely to create such belief[.] A principal may be estopped from denying agency where his intentional or careless conduct causes a third party to believe that the transaction was entered into by or for him.

(Citation and punctuation omitted; emphasis supplied.) Id.

Here, there is no evidence of any words or conduct by Thomas which could have caused Lowndes County to believe that Thomas consented to Lynn signing the arbitration agreement on his behalf. As stated previously, Lowndes County was aware that Lynn did not possess a power of attorney or any other legal document authorizing Lynn to sign the arbitration agreement or to take *any* action on Thomas' behalf. Still, Lowndes County points to the fact that Thomas "made a mark" on an advocate form during the admission process to indicate his desire that his mother make decisions concerning him.[4] Thomas, however, who had been born with down syndrome, could not read or write but could only mark an "x" when directed. Thomas was also mentally retarded, was only able to communicate by facial expressions and vocalizations, and was not able to do anything for himself. There was also evidence

---

[4] There is no evidence in the record that the arbitration form was ever presented to, or discussed with Thomas.

11

that during Thomas' admission to the facility, Thomas was not capable of objecting to Lynn signing his paperwork.[5] Most importantly, the admissions director stated in her affidavit that she had personally observed Thomas during the admission process and was fully aware of his "handicap[s]" at the time he marked the advocate form. Therefore, in light of the circumstances and the admission director's observation and knowledge of Thomas' physical and mental limitations, Lowndes County was not justified in believing that Thomas had consented to Lynn signing the arbitration agreement on his behalf based upon his act of "marking" a separate advocate form. See *Ashburn Health Care Center, Inc. v. Poole*, 286 Ga. App. 24, 25-27 (648 SE2d 430) (2007) (holding that there was no evidence that the husband had authority to sign the arbitration agreement on wife's behalf where there was no evidence that the wife knew about the agreement or authorized her husband to sign the agreement, and therefore the agreement was unenforceable against the wife's estate).

Lowndes County argues extensively about Lynn's conduct, which it contends shows Lynn's apparent authority to sign the arbitration agreement for Thomas. Specifically, Lowndes County points to the fact that Lynn testified during her

---

[5] The deposition testimony does not explain specifically why Thomas was unable to object to Lynn signing his paperwork.

12

deposition that she was responsible for making all decisions concerning Thomas and that Thomas had relied on her for "everything." However, Lynn's "own action[s] of signing documents for her [son] [are] insufficient to create agency. Any manifestations of implied agency or apparent authority arising only through the words or acts of the purported agent are insufficient to authorize a finding that an agency existed." (Citation omitted.) *United Health Svcs. of Ga., Inc.*, supra, 342 Ga. App. at 5 (2) (b). We have also been clear that "an agency finding cannot be based upon the assumption that an agency relationship exists or upon an inference drawn from the alleged agent's actions." (Citation omitted.) Id. Therefore, because of the well-settled legal principles that a finding of apparent authority is based entirely on the *principal's* actions, and the absence of any words or conduct by Thomas consenting to Lynn taking any action on his behalf, the trial court erred by ruling that Lynn had apparent authority to sign the arbitration agreement.

Nevertheless, Lowndes County contends that even if Lynn lacked authority to sign the arbitration agreement for Thomas, the agreement is still enforceable because the trial court correctly ruled that the agreement was ratified upon Lynn's

appointment as the administratrix of Thomas' estate. This argument, however, also fails.

It is well-settled law that a principal-agent relationship may also arise where one person "subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1. "Ratification of an act may be express or implied, including by the silence of the principal, but the principal must have full knowledge of all material facts[.]" *McKean v. GGNSC Atlanta, LLC*, 329 Ga. App. 507, 511 (1) (b) (765 SE2d 681) (2014).

> It has long been the law in Georgia that a ratification by the principal relates back to the act ratified, and takes effect as if originally authorized. . . . Where a principal is informed by his agent of what he has done, the principal must express his dissatisfaction within a reasonable time, otherwise his assent to his agent's acts will be presumed. Unless the principal repudiates the act promptly or within a reasonable time, a ratification will be presumed. But in order for a ratification to be binding, the principal must have had full knowledge of all material facts.

(Citation omitted.) Id. See also *Ellis v. Fuller*, 282 Ga. App. 307, 310 (2) (638 SE2d 433) (2006) ("Ratification occurs when a principal knows of the agent's unauthorized act and, with full knowledge of all the material facts, accepts and retains the benefits of the unauthorized act.") (citation and punctuation omitted).

14

Here, there is no evidence that Thomas had any knowledge at any time of the arbitration agreement or that Lynn had signed the agreement on his behalf. Hence, in the absence of any evidence to show that Thomas was aware that Lynn signed the arbitration agreement, he could not ratify the arbitration agreement. See *McKean*, supra, 329 Ga. App at 511-512 (1) (b) (holding that ratification was not shown where there was no evidence to show that the mother knew of her son's unauthorized act of signing an arbitration agreement on her behalf). Furthermore, Lowndes County's argument that ratification occurred by virtue of Lynn obtaining the letters of administration for Mr. Thomas' estate is also without merit. It is true that OCGA § 53-7-1(a) allows a personal representative to ratify acts on behalf of the estate and that OCGA § 53-12-261 (b) (22)[3] gives the administrator the authority to arbitrate claims on behalf of the estate. There is, however, nothing in either statute to indicate that ratification of an agent's acts occurs automatically upon appointment as an administrator of an estate. Instead, OCGA § 53-7-1 (a) states that a personal representative *may* ratify and accept acts performed which are beneficial to the estate. Likewise, OCGA § 53-12-261 (b) permits the administrator to arbitrate claims, but

[3] The Letters of Administration provided Lynn with the power to act in accordance with OCGA § 53-12-261.

15

the statute contains no *requirement* that an administrator arbitrate claims. Finally, since Thomas' death, Lynn has maintained the position that she did not have authority to sign the arbitration agreement, and she has consistently opposed arbitration while acting as Thomas' administratrix. Accordingly, for the reasons stated above, the trial court erred by ruling that the arbitration agreement was enforceable because it was ratified by Lynn.

We also reject Lowndes County's argument that the arbitration agreement should be enforced under judicial estoppel principles and the third-party beneficiary doctrine.

As to Lowndes County's estoppel argument, "[u]nder the doctrine of judicial estoppel, a party cannot take a position, persuade a court to accept the same, and then later assert an inconsistent position." *Fox v. Norfolk Southern Corp.*, 342 Ga. App. 38, 59 (4) (b) n. 21 (802 SE2d 319) (2017).

> The essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary. The doctrine is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings and is

16

designed to prevent parties from making a mockery of justice through inconsistent pleadings.

(Citation omitted.) *Kamara v. Henson*, 340 Ga. App. 111, 112 (1) (796 SE2d 496) (2017). The determination of whether judicial estoppel applies involves three factors:

First, the party's later position must be clearly inconsistent with its earlier position. Second, the party must have succeeded in persuading a court to accept the party's earlier position, because absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations. And third, a court must consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

(Citation omitted.) *Zahabiuon v. Automotive Finance Corp.*, 281 Ga. App. 55, 57 (1) (635 SE2d 342) (2006).

Here, we disagree with Lowndes County that Lynn asserted inconsistent positions. Although Lynn testified by deposition that she believed she had authority to sign the arbitration agreement, throughout the course of the proceedings Lynn has maintained the litigation position that she did not, in fact, have authority to sign the arbitration agreement. Moreover, Lowndes County cannot point to any prior proceeding in which Lynn asserted, and a court accepted, her claim that she had

17

authority to sign the arbitration agreement on Thomas' behalf. Lastly, we cannot discern any unfair advantage Lynn might receive in subsequent proceedings. Indeed, if this case proceeds to trial, the factfinder may render an unfavorable verdict to the estate. Accordingly, we reject Lowndes County's argument that the agreement should be enforced under judicial estoppel principles.

As to Lowndes County's argument that the agreement should be enforced under the third-party beneficiary doctrine, OCGA § 9-2-20 (b) provides: "The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." We have held that

> [a] person becomes a third-party beneficiary to a contract when one party to the contract promised another party to the contract to render some performance to the nonparty to the contract and both parties to the contract intended that the contract benefit the nonparty.

(Citation and punctuation omitted.) *Coleman*, supra, 344 Ga. App. at 685 (2).

Here, Lowndes County argues that the agreement is enforceable against Lynn personally because Lynn received benefits from the agreement and the agreement contained a stipulation that, "[i]n signing this Agreement, Patient/Resident Representative binds both Patient/Resident and Patient/Resident Representative individually." "[Lynn], however, has repudiated [any] alleged benefit[s] and does not

18

seek to enforce the arbitration agreement." *Coleman*, supra, 344 Ga. App. at 685 (2).

Moreover, "[a]lthough [Thomas] received care at the nursing facility, the arbitration

provision was not part of — or required by — his admission agreement and has no

bearing on the facility's duties and obligations with respect to the provision of care

and treatment." Id. at 685-686 (2).[4] Accordingly, under the facts of this case, we reject

Lowndes County's claim that Lynn is bound by the arbitration agreement on the basis

of the third-party beneficiary rule. See id. at 686 (2) (rejecting third-party beneficiary

claim where patient did not seek to enforce the arbitration agreement and the

agreement was not made a condition of admission to the facility).

3. Lynn further argues that the trial court erred in denying her motion to tax

costs against Lowndes County. In light of our holding in Division 2 reversing the trial

court's order compelling arbitration, this claim is now moot.

Accordingly, for the reasons stated above, we reverse the trial court's order to

compel arbitration. As a result, we also reverse the order confirming the arbitration

---

[4] The arbitration agreement stated that "[t]he signing of this Agreement is not a precondition to admission, expedited admission, or the furnishing of services to the Patient/Resident by the Healthcare center[,]" and also stated that the agreement did not "reduce or affect in any way the Healthcare Center's duties and obligations with respect to the provision of care and treatment of Patient/Residents."

19

award and remand for Lynn's claims to proceed through the normal course of litigation.

*Judgment reversed and case remanded. Rickman and Reese, JJ., concur.*