**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**June 25, 2021**

# In the Court of Appeals of Georgia

A21A0055. WEST et al. v. BOWSER et al.

BROWN, Judge.

In this interlocutory appeal, Jobe West, individually and as executor of the estate of Ronald West, and Kelly Blottenberger (collectively "plaintiffs") contend that the trial court erred in compelling arbitration in a wrongful death action filed by plaintiffs as the surviving children of Ronald West against Provident Group-Creekside Properties, LLC, d/b/a Provident Village at Creekside, Provident Resources Group, Inc., Provident Resources Management, LLC (collectively "the Provident defendants"), and Monte Bowser. Because we conclude that Jobe lacked the authority to sign the Arbitration Agreement on Ronald's behalf, we reverse the trial court's order compelling arbitration.

Jobe was appointed guardian and conservator of Ronald, his father, and Letters of Guardianship and Conservatorship of Adult Ward were issued by the Probate Court of Carroll County in June 2017. The Letters of Guardianship and Conservatorship each provide that Jobe's "authority to act pursuant to these Letters is subject to applicable statutes and to any special orders entered in this case." In July 2017, Ronald was admitted to Provident Village at Creekside, "a residential community for senior citizens needing assistance." Jobe signed the Resident Agreement as the "Responsible Party" for Ronald as well as a separate Arbitration Agreement with Provident Village at Creekside. Ronald did not sign either agreement.

Pursuant to the Arbitration Agreement,

[a]ny and all disputes between the Resident and the Facility shall be submitted to binding arbitration where the amount in controversy exceeds $15,000. This includes any disputes arising out of or in any way relating to this Agreement (its enforceability), the Admission Agreement, or any of the Resident's stays at the Facility, whether existing or arising in the future, whether for statutory, compensatory, or punitive damages, and irrespective of the legal theories upon which the claims is asserted.

Additionally, the Agreement provided:

A person signing who routinely makes decisions for the Resident, if not the Power of Attorney or Guardian/Conservator, will be considered a Legal Representative. This executed Agreement becomes a part of the Resident's underlying Admission Agreement(s). The term "Resident" shall refer collectively to those signing with or for the Resident. The Resident will be considered to be a third party beneficiary of this Agreement. . . . The term "Facility" includes all of the following associated with the above-identified facility: owner, parent company, holding company, subsidiary, manager, employee, person/entity acting on behalf of the facility, consultant, and administrative services provider.

The Agreement also stated that the "Resident understands that (s)he can seek legal counsel prior to entering into this contract and is encouraged to ask questions. . . . **IF THIS AGREEMENT IS NOT SIGNED, THE RESIDENT WILL STILL BE ALLOWED TO RECEIVE SERVICES AT THE FACILITY.**" Jobe submitted an affidavit in which he averred that the Arbitration Agreement was not explained to him and that he was told that he had to sign a number of documents, including the Arbitration Agreement, in order for Ronald to be admitted to the facility.

According to the complaint filed by plaintiffs, while Ronald was a resident of Provident Village at Creekside in 2018, he was shoved by Bowser, an employee of the facility, and eventually died as a result of his injuries. The Provident defendants

3

answered and filed a motion to dismiss and compel arbitration. Bowser subsequently answered and filed a motion to join the Provident defendants' motion to dismiss and compel arbitration. After a hearing, the trial court granted the motion to compel arbitration as to all defendants and certified its order for immediate review.

On appeal, plaintiffs contend that the trial court erred in granting defendants' motion and compelling arbitration for a number of reasons. Plaintiffs assert that Jobe lacked authority to sign the Arbitration Agreement on Ronald's behalf, that the Arbitration Agreement lacked proper legal consideration, that Jobe was fraudulently induced to sign the Arbitration Agreement, and that the Arbitration Agreement is void as against Georgia law and public policy.

1. We first address whether Jobe, as Ronald's guardian and conservator, had the authority to sign the Arbitration Agreement on Ronald's behalf. We conclude he did not.

Whether a valid and enforceable arbitration agreement exists is a question of law. *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 117 (1) (746 SE2d 680) (2013). "On appeal from the grant or denial of a motion to compel arbitration, the standard of review is whether the trial court was correct as a matter of law. The construction of an arbitration agreement, like any other contract, presents a question of law, which

is subject to de novo review." (Citations and punctuation omitted.) *Aaron v. United Health Svcs. of Ga.*, 349 Ga. App. 563, 563-564 (826 SE2d 442) (2019). "And the validity of an arbitration agreement is generally governed by state law principles of contract formation." (Citation and punctuation omitted.) *United Health Svcs. of Ga. v. Alexander*, 342 Ga. App. 1, 2 (2) (802 SE2d 314) (2017). See also *Lynn v. Lowndes County Health Svcs.*, 354 Ga. App. 242, 245 (2), n.3 (840 SE2d 623) (2020) ("This principle still applies in cases . . . where the arbitration agreement states that the agreement is to be governed by the Federal Arbitration Act."). "As the party seeking arbitration, [defendants] bear[ ] the burden of proving the existence of a valid and enforceable agreement to arbitrate." (Citation and punctuation omitted.) *Triad Health Mgmt. of Ga., III v. Johnson*, 298 Ga. App. 204, 206 (2) (679 SE2d 785) (2009).

The trial court determined that the powers granted to a conservator under OCGA § 29-5-23 (a) (2) and (6) authorized Jobe to bind Ronald under the Arbitration Agreement. While the trial court did not identify any applicable provisions of the Guardianship Code, as the parties point out, this case also implicates a guardian's powers under OCGA § 29-4-23.

(a) Pursuant to OCGA § 29-4-23 (a) (3), a guardian may "[b]ring, defend, or participate in legal, equitable, or administrative proceedings, including alternative

5

dispute resolution, as are appropriate for the support, care, education, health, or welfare of the ward in the name of or on behalf of the ward[.]" OCGA § 29-5-23 (a) (6) tracks this language and equivalently provides that a conservator may "[b]ring, defend, or participate in legal, equitable, or administrative proceedings, including alternative dispute resolution, as are appropriate for the support, care, education, health, or welfare of the ward in the name of or on behalf of the ward[.]" OCGA § 29-5-23 (a) (2) allows a conservator to

> [e]nter into contracts for labor or service upon such terms as the conservator may deem best, but only to the extent that the annual compensation payable under such contracts, when combined with other anticipated disbursements, does not exceed the amount of the annual income or, if applicable, the annual budget amount that has been approved by the court pursuant to Code Section 29-5-30[.]

As plaintiffs assert, the issue presented in this case falls squarely under this Court's recent holding in *CL SNF, LLC v. Fountain*, 355 Ga. App. 176 (843 SE2d 605) (2020), which was decided after the trial court compelled arbitration in this case. In that case, the appellee was appointed guardian of her mentally incapacitated nephew. Id. at 176. Upon the nephew's admission to a healthcare facility, the guardian signed a Facility Admission Agreement as well as a separate Arbitration

6

Agreement. Id. at 176-177. As in the instant case, the signing of the Arbitration Agreement was not a precondition of admission to the facility. Id. at 177. The guardian subsequently filed a complaint against the facility, alleging that her nephew had been sexually battered and assaulted while a resident. Id. at 178. The facility filed a motion to compel arbitration, which the trial court denied. Id. On appeal, we affirmed the trial court's order, concluding that the guardian did not have authority to sign the Arbitration Agreement on behalf of her nephew. Id. at 184 (1). In reaching our decision, we examined the various powers granted to a guardian under the Guardianship Code, specifically those found in OCGA § 29-4-23 (a), and concluded that the plain language of these provisions did not provide the guardian the authority to sign the pre-dispute Arbitration Agreement. Id. at 178-184 (1). Specifically as to OCGA § 29-4-23 (a) (3), we explained that a guardian's action in signing a pre-dispute arbitration agreement is not the equivalent of initiating, contesting, or taking part in any type of proceeding, including alternative dispute resolution. Id. at 183 (1). Similarly, here, Jobe's power as guardian and conservator to "[b]ring, defend, or participate in legal, equitable, or administrative proceedings, including alternative dispute resolution," did not extend to signing the voluntary pre-dispute Arbitration

7

Agreement on behalf of Ronald.[1] Accordingly, Ronald did not assent to the terms of the Arbitration Agreement, and it is not enforceable against him.

(b) Nonetheless, the Provident defendants contend that *Fountain* was not properly decided and should not be adopted by this Court. However, *Fountain* is binding precedent on this Court.[2] See Court of Appeals Rule 33.2 (a) (2) ("If an appeal was decided by a division of this Court [prior to August 1, 2020], a published opinion in which all three panel judges fully concur is binding precedent.").

(c) Alternatively, the Provident defendants contend that if OCGA § 29-4-23 is interpreted as not allowing a guardian to sign a pre-dispute arbitration contract, the statute is preempted by the Federal Arbitration Act ("FAA").

> The FAA preempts any state law that conflicts with its provisions or undermines the enforcement of private arbitration agreements. To the extent that state law stands as an obstacle to the accomplishment and

---

[1] Nor do we find OCGA § 29-5-23 (a) (2), which gives a conservator authority to enter into contracts for labor or service, applicable in the instant case because the Arbitration Agreement is not a contract for labor or service and is a separate agreement from the Resident Agreement. We likewise conclude that none of the remaining powers delineated in OCGA § 29-5-23 (a) authorize the signing of the Arbitration Agreement in this case.

[2] We note that the Supreme Court of Georgia has granted certiorari in *Fountain*, but has not yet issued an opinion.

8

execution of the full purposes and objectives of Congress, it will be preempted by the FAA.

(Citations and punctuation omitted.) *Triad Health*, 298 Ga. App. at 208 (3). However, the FAA

permits arbitration agreements to be declared unenforceable upon such grounds as exist at law or in equity for the revocation of any contract. This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.

(Citation and punctuation omitted.) *AT&T Mobility v. Concepcion*, 563 U. S. 333, 339 (II) (131 SCt 1740, 179 LE2d 742) (2011). See also *Triad Health*, 298 Ga. App. at 209 (3) ("generally applicable contract defenses, such as fraud, duress, or unconscionability, may invalidate arbitration agreements to which the FAA applies").

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. See *Coleman v. United Health Svcs. of Ga.*, 344 Ga. App. 682, 683 (1) (812 SE2d 24) (2018) ("[a] contract is valid only if the parties assented to the contract terms").

9

Pursuant to OCGA § 13-3-2, "[t]he consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." In this vein, lack of assent to the contract's terms is a generally applicable contract defense and thus may invalidate an arbitration agreement consistent with the FAA. An arbitration "agreement is, at base, a contract, and the [FAA] does not require parties to arbitrate when they have not agreed to do so." *Ashburn Health Care Center v. Poole*, 286 Ga. App. 24, 25 (648 SE2d 430) (2007), quoting *Volt Information Sciences v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 478 (109 SCt 1248, 103 LE2d 488) (1989). See also *Coleman*, 344 Ga. App. at 683-684 (1) (a) (arbitration agreement signed by nursing home resident's brother-in-law was unenforceable on grounds that brother-in-law lacked authority to bind resident under advanced health care directive). See *McKean v. GGNSC Atlanta*, 329 Ga. App. 507, 509-513 (1) (765 SE2d 681) (2014) (son lacked authority to sign arbitration agreement on behalf of his mother).

> As the Eleventh Circuit Court of Appeals stated in *Dasher v. RBC Bank (USA)*, 745 F3d 1111, 1116 (II) (B), n.5 (11th Cir. Fla. 2014), the federal policy favoring arbitration is taken into consideration even in applying ordinary state law. The federal policy favoring arbitration is not, however, the same as applying a presumption of arbitrability. We only apply the presumption of arbitrability to the interpretation of contracts

10

if we have already determined that, under state law, the parties formed a valid agreement to arbitrate. The federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Accordingly, the first task of a court asked to compel arbitration of a dispute *is to determine whether the parties agreed to arbitrate that dispute*. Here, because no valid and enforceable agreement to arbitrate was formed, the federal policy in favor of arbitration does not control.

(Citations and punctuation omitted; emphasis in original.) *Alexander*, 342 Ga. App. at 5 (3). Accordingly, the trial court erred in granting the motion to dismiss and compel arbitration.

2. Given our holding in Division 1, we need not address plaintiffs' other arguments related to the enforcement of the Arbitration Agreement.

*Judgment reversed. Doyle, P. J., and Reese, J., concur.*

11